UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVERWATCH,<br><br>        Plaintiff,<br><br>  v.<br><br>MERCER FRASER COMPANY, and DOES 1 TO 10, inclusive,<br><br>        Defendants. | No. C-04-4620 SC<br><br>ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, FOR SUMMARY ADJUDICATION OF ISSUES |

### I. INTRODUCTION

Plaintiff Northern California Riverwatch ("Plaintiff") filed suit against Defendant Mercer Fraser Company ("Defendant"), alleging violations of the Clean Water Act ("CWA").  Briefly stated, Plaintiff alleges that Defendant has violated and continues to violate the CWA by discharging pollutants from its concrete production plants into the waters of the United States. In the Motion for Summary Judgment ("Motion") now before the Court, Defendant has moved for summary judgment on a variety of grounds.[1]  For the reasons stated herein, the Court DENIES the

---

[1] Defendant has filed this Motion as a Motion for Summary Judgment.  Defendant has the right to move for summary judgment at any time.  Fed. R. Civ. P. 56(b).  However, discovery is still in the early stages in this case and not scheduled to conclude until early 2006.  See April 8, 2005 Joint Case Discovery Plan and Order. In many respects, the substance of the instant Motion more closely resembles a Motion to Dismiss.  Nevertheless, since the hurdle for

Motion in its entirety.[2]

**II. BACKGROUND**

Plaintiff is a California non-profit public benefit corporation that works to protect, enhance, and restore the surface and subsurface waters of Northern California. Complaint at 2. Plaintiff's members use the waters of Northern California in a variety of ways. Id. Defendant operates four commercial aggregate processing facilities with onsite asphalt concrete production plants. Motion at 3-5. The aggregate processing facilities include rock crushers, vibrating screens, conveyors, wash systems, water pumps, generators, and loading equipment. The asphalt production plants then convert processed aggregates into asphalt concrete. Wash water is released into onsite man-made settling basins. Id. The environmental impact of the water in these settling basins is the parties' main point of dispute.

Plaintiff alleges that Defendant's facilities violate the CWA and assert four causes of action. In the first, brought pursuant to 33 U.S.C. §§ 1251 and 1342, Plaintiff alleges that Defendant is "in violation of the CWA requirement that discharges of pollutants from a point source to waters of the United States be regulated by

---

the non-moving party is higher for a Motion for Summary Judgment, and the Court has ruled here for the non-moving party, whether the Court treats this Motion as one for dismissal or one for summary judgment is moot. With respect to the choice made by Defendant and for the sake of consistency, this Order treats the instant Motion as one for summary judgment.

[2] Because the Court has denied the Motion in its entirety, Plaintiff's Motion for Continuance for Additional Discovery as to Defendant's Motion is rendered moot.

2

1  a NPDES[3] permit." Complaint at 6. In the second, brought
2  pursuant to the same sections of the CWA, Plaintiff alleges that
3  Defendant violates regulations concerning industrial stormwater
4  discharges. Id. at 7. In the third, brought pursuant to 33
5  U.S.C. § 1342(p) and 40 C.F.R. §§ 411.10, 436.20, 440.10, 443.10
6  *et seq*, Plaintiff alleges that Defendant is violating the CWA "by
7  failing to ensure that discharge of pollutants from their
8  Facilities do not exceed acceptable established levels for
9  stormwater and non-stormwater discharge of pollutants as set out
10 in the General Storm Water Permit[4] [("General Permit")] and 40 CFR
11 Subchapter N Parts 411, 436, 440, and 443." Id. In the fourth,
12 brought pursuant to 33 U.S.C. §§ 1342 and 1316, Plaintiff alleges
13 that Defendant has failed to implement mandatory best practices
14 with regard to its discharges. Id. at 9.

### III. **LEGAL STANDARD**

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment in favor of the movant is proper if "there is no
genuine issue as to any material fact." Celotex Corp. v. Catrett,
477 U.S. 317, 322 (1986). "[T]he movant has the burden of showing
that there is no genuine issue of fact." Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 256 (1986). Furthermore, "[o]n summary
judgment the inferences to be drawn from the underlying facts ...

---

[3] National Pollutant Discharge Elimination System

[4] The "General Storm Water Permit" refers to NPDES General Permit No. CAS000001, issued pursuant to 33 U.S.C. § 1342(p) by the California State Water Resources Control Board as Water Quality Order No. 97-03-DWQ. See Opposition, Exhibit A at 1; Defendant's Request for Judicial Notice, Exhibit C.

1 must be viewed in the light most favorable to the party opposing
2 the motion." United States v. Diebold, Inc., 369 U.S. 654, 655
3 (1962).

**IV.  DISCUSSION**

The CWA regulates discharge of pollutants into navigable waters of the United States.  33 U.S.C. § 1251.  Discharge of pollutants is unlawful except when a permit is obtained in compliance with the statute.  33 U.S.C. §§ 1311, 1342.  "Discharge of a pollutant" means "any addition of any pollutant to navigable waters from any point source."  33 U.S.C. § 1362(12).  A "point source" is "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged."  33 U.S.C. § 1362(14).  "Navigable waters" means the waters of the United States.  33 U.S.C. § 1362(7).

Simply stated, Defendant asserts that summary judgment is appropriate because its settling basins "are not 'waters of the United States' and are not subject to jurisdiction under the Clean Water Act ...."  Motion at 11.  Defendant also alleges that its "settling ponds and other facilities do not constitute a point source."  Id. at 14.  Defendant further alleges that the settling ponds are neither "waters of the United States" nor "tributary" to any such waters.  Id. at 16.

Plaintiff alleges, however, and this Court must take as true for purposes of this Motion, that the point sources here are not

4

just the aggregate processing facilities but also the settling basins themselves. Plaintiff's Opposition to Motion ("Opposition") at 9. Plaintiff further alleges that the basins discharge pollutants to groundwater which finds its way to rivers. Id. Plaintiff supports these allegations with an expert declaration stating that aluminum and silica, and possibly other pollutants, are "discharged from the facilities to the unconfined aquifer and riverbed." Declaration of Larry L. Russell at 2.[5] Defendant does not dispute that rivers near its facilities, such as the Van Duzen River, the Eel River, and Willow Creek, are "waters of the United States." Motion at 15. Therefore, the main issue now before this Court is whether a man-made wastewater basin from which pollutants seep into groundwater and subsequently into waters of the United States is covered by the CWA. The issue is not whether such seepage actually occurs here because the Court must accept as true, for purposes of this Motion, that such seepage does occur.

    The Court finds that the regulations of the CWA do encompass the discharge of pollutants from wastewater basins to navigable waters via connecting groundwaters. Congress has explicitly stated that the objective of the CWA "is to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). Therefore, it would hardly make

---

[5] The Court notes that Defendant objects to the Russell Declaration, asserting that it relies on evidence that is inadmissible. However, with respect to this particular objection, the Court finds that it is more appropriately dealt with at the time of trial.

5

sense for the CWA to encompass a polluter who discharges pollutants via a pipe running from the factory directly to the riverbank, but not a polluter who dumps the same pollutants into a man-made settling basin some distance short of the river and then allows the pollutants to seep into the river via the groundwater.

Although the Ninth Circuit has not ruled directly on this issue, courts in this district and other districts within the Ninth Circuit have reached similar conclusions. See, e.g., N. Cal. River Watch v. City of Healdsburg, No. 01-04686, 2004 U.S. Dist. LEXIS 1008, at *35 (N.D. Cal. Jan 23, 2004) ("This Court finds persuasive the line of authority ... holding that the Act extends federal jurisdiction over groundwaters hydrologically connected to surface waters that are themselves navigable waters."); Wash. Wilderness Coalition v. Hecla Mining Co., 870 F. Supp. 983, 990 (E.D. Wash. 1994) ("[S]ince the goal of the CWA is to protect the quality of surface waters, any pollutant which enters such waters, whether directly or through groundwater, is subject to regulation by NPDES permit."). District Courts in other circuits have reached similar conclusions. See, e.g., Sierra Club v. Colo. Ref. Co., 838 F. Supp. 1428, 1434 (D. Colo. 1993) (holding that the CWA applies to discharges of pollutants that reach navigable waters through groundwater).

Furthermore, while the Ninth Circuit has not directly ruled on the issue of man-made basins being hydrologically connected to a water of the United States, it has held that there are factual situations where a man-made basin does fall within the purview of the CWA. For example, the Ninth Circuit has held that settling

6

1  basins fall under the provisions of the CWA if they have a
2  connection to interstate commerce. Leslie Salt Co. v. United
3  States, 896 F.2d 354, 359 (9th Cir. 1990). In Leslie Salt, a
4  connection to interstate commerce was found where migratory birds
5  or endangered species use the settling basins as a habitat. Id.
6  The Ninth Circuit stated, "The commerce clause power, and thus the
7  Clean Water Act, is broad enough to extend the [Army Corp of
8  Engineer's] jurisdiction [pursuant to the CWA] to local waters
9  which may provide habitat to migratory birds and endangered
10 species." Id. One of Congress' stated goals in passing the CWA
11 was "the protection and propagation of fish, shellfish, and
12 wildlife ..." 33 U.S.C. § 1251(a)(2). Therefore, this Court
13 finds that it would defeat the intent of Congress in passing the
14 CWA to hold that a settling basin is subject to the provisions of
15 the CWA only if a migratory bird chooses, for reasons unknown to
16 this Court, to alight directly in the basin, but not if the same
17 migratory bird chooses to alight in a nearby river, which is
18 hydrologically connected to that same basin. In other words,
19 under Leslie Salt, this Court holds that a hydrological connection
20 between a man-made settling basin and a water of the United States
21 is sufficient to subject the basin to the provisions of the CWA.[6]

---

[6] Defendant cites Leslie Salt for the proposition that "artificially created waters which are currently being used for commercial purposes" are excluded from the mandates of the CWA. Motion at 12. However, Defendant fails to mention that the Ninth Circuit stated that under the Army Corps of Engineer regulations at issue in Leslie Salt, even commercially-used artificially-created waters were subject to the jurisdiction of the CWA on a "case-by-case" basis of review. 896 F.2d at 360. "Case-by-case" is a euphemism for determining an issue as a matter of fact rather than a matter of law. Therefore, rather than providing support for

United States District Court
For the Northern District of California

1    Defendant has put forth several cases to contest this
2 conclusion.  For example, Defendant pointed to <u>Village of</u>
3 <u>Oconomowoc Lake v. Dayton Judson Corp.</u>, where the 7th Circuit held
4 that groundwaters were not subject to the CWA.  24 F.3d 962 (7th
5 Cir. 1994).  However, the court in that case did not specifically
6 rule on the issue of groundwaters that are hydrologically
7 connected to a water of the United States, other than to say that
8 the "possibility of a hydrological connection" is not a
9 "sufficient ground of regulation."  <u>Id.</u> at 965.  Although Seventh
10 Circuit case law is of course not binding on this Court, this
11 Court agrees with the holding that mere possibility is an
12 insufficient basis for regulation of a particular settling basin.
13 However, the issue here is simply whether Plaintiff has put forth
14 sufficient facts to defeat summary judgment, and, with respect to
15 that issue, mere possibility of a hydrological connection is
16 sufficient.  Nevertheless, the Court cautions Plaintiff that as
17 this litigation moves beyond the current stage, "[i]t is not
18 sufficient to allege groundwater pollution, and then to assert a
19 general hydrological connection between all waters.  Rather,
20 pollutants must be traced from their source to surface waters, in
21 order to come within the purview of the CWA." <u>Wash. Wilderness</u>
22 <u>Coalition</u>, 870 F. Supp. at 990.
23    Based on the above discussion, the Court finds that
24 Plaintiff's allegations are sufficient to bring Defendant's

---

Defendant's Motion, the case, at a minimum, demonstrates that whether Defendant's settling basins are subject to the CWA is a question of fact ill-suited for summary judgment.

8

1  settling basins within the purview of the CWA for purposes of the
2  Motion now before the Court.  Plaintiff has presented evidence in
3  the form of the Russell Declaration which alleges that Defendant's
4  facilities discharge pollutants including aluminum and silica into
5  the surrounding groundwater, which is allegedly hydrologically
6  connected to waters of the United States.  Under the above case
7  law, this is equivalent to evidence that Defendant has discharged
8  pollutants into the waters of the United States in violation of
9  the CWA.  In contrast, the declaration of Defendant's expert
10 states that there is no discharge into any water covered by the
11 CWA.  Declaration of Justin Porteous at 2.  Therefore, the Court
12 finds that there is a material issue of fact and summary judgment
13 in favor of Defendant would be inappropriate.

14     Defendant raises several other issues in its Motion.  First,
15 Defendant asserts that the First Cause of Action must be dismissed
16 because the State of California has determined that state-issued
17 Waste Discharge Requirements ("WDRs") are not required for the
18 four sites at issue.  Motion at 7.  Defendant bases this theory on
19 case law supporting the proposition that WDRs are equivalent to
20 CWA permits.  Id.  Non-controlling case law does in fact suggest
21 that "[b]y every relevant measure, WDRs are equivalent to CWA
22 permits."  Envtl. Prot. Info. Ctr. v. Pacific Lumber Co., 301 F.
23 Supp. 2d 1102, 1105 (N.D. Cal. 2004).  Nevertheless, the Court
24 finds Defendant's theory to be unpersuasive because it is based on
25 communications from the California Regional Water Quality Control
26 Board in 1986 and 1995.  Motion at 6-7.  Plaintiff's action is
27 generally based on a period dating from 1999.  Opposition, Exhibit

9

A at 4. Therefore, the Court declines to grant summary judgment on the First Cause of Action based on a state agency decision not to require WDRs over a decade ago.

Second, Defendant asserts that Plaintiff failed to properly give the required 60-day notice of intent to sue. Under 33 U.S.C. § 1365(b), a non-governmental plaintiff must give an alleged violator of the CWA 60-days notice of intent to sue. In the instant matter, Plaintiff sent notice to Defendant on August 1, 2004 ("Notice") and filed this action on November 1, 2004, well beyond the 60 day minimum. Opposition, Exhibit A. Defendant takes issue, however, with the content of the notice. Specifically, Defendant alleges that the Notice fails to describe required details, such as dates, location, or alleged discharge. Motion at 22.

40 C.F.R. § 135.3(a) describes the necessary contents of a notice of intent to sue. The regulation states:

> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

40 C.F.R. § 135.3(a). The Ninth Circuit has interpreted 33 U.S.C. § 1365(b) and related regulations such as 40 C.F.R. § 135.3(a) in a broad fashion. For example, the Ninth Circuit has written, "In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that

10

it will know what corrective actions will avert a lawsuit." <u>Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy</u>, 305 F.3d 943, 952 (9th Cir. 2002) (internal citations and quotations omitted). The Ninth Circuit has also held:

> The purpose of the 60-day notice is to provide the agencies and the defendant with information on the cause and type of environmental laws or orders the defendant is allegedly violating so that the agencies can step in, investigate, and bring the defendant into compliance. The point is to trigger agency enforcement and avoid a lawsuit. Congress did not intend to unduly burden citizens by requiring them to basically carry out the job of the agency.

<u>Id.</u>

In the Notice that Plaintiff sent to Defendant on August 1, 2004, Plaintiff gave five concrete examples of how Defendant had failed to be in compliance with the CWA from August 1, 1999 to August 1, 2004. Opposition, Exhibit A at 4-5. Furthermore, Plaintiff described continuing violations of monitoring and reporting requirements over the same period of time. <u>Id.</u> at 6-8. Based on these examples, and having reviewed the entirety of the Notice, the Court finds that Plaintiff has met the standards set out by the Ninth Circuit for giving the required 60-day notice.

Finally, the Court turns to Defendant's description of its conduct subsequent to receipt of the Notice from Plaintiff. One purpose of the notice requirement is to give potential defendants an opportunity to correct any violations of the CWA. <u>Henry Bosma Dairy</u>, 305 F. 3d at 953. Since receiving the Notice, Defendant has filed Notices of Intent ("NOIs") with the State of California

11

as required under the General Permit.[7]  Motion at 8.[8]  Defendant has also drafted Storm Water Pollution Prevention Plans ("SWPPPs") for each site as required by the General Permit.  Motion at 9.  Defendant's Motion appears to put forth the argument that by filing NOIs and drafting SWPPPs, it has complied with the General Permit, thus making moot the Second, Third, and Fourth Causes of Action.  Id. at 8-9.  In essence, Defendant alleges that since there have been no discharges of pollutants, "the SWPPP is deemed not necessary; however, if there is a discharge, the SWPPP ... will be in place."  Id. at 8.  The Court finds that this argument has little substance to support summary judgment in favor of Defendant.  The General Permit prohibits "materials other than storm water ... that discharge either directly or indirectly to waters of the United States."  Defendant's Request for Judicial Notice, Exhibit C at 3.  In its Complaint, Plaintiff alleges that Defendant has continued to engage in "discharges of stormwater containing pollutants."  Complaint at 7.  "Stormwater containing pollutants" is by definition a "material other than storm water."  The parties thus dispute the material facts of whether or not Defendant has discharged pollutants and whether such alleged

---

[7] As stated earlier in this Order, "General Permit" refers to NPDES General Permit No. CAS000001, issued pursuant to 33 U.S.C. § 1342(p) by the California State Water Resources Control Board as Water Quality Order No. 97-03-DWQ.  See Opposition, Exhibit A at 1; Defendant's Request for Judicial Notice, Exhibit C.

[8] The Court hereby acknowledges Defendant's statement, "Mercer Fraser's certification of the NOIs at issue is not an admission that Mercer Fraser is legally obligated to certify the NOIs nor is it an admission that Mercer Fraser had [sic] ever discharged pollutants into a protected waterway ..."  Motion at 8.

12

discharge is prohibited by the General Permit.  Therefore, even considering Defendant's actions since the Notice was received, the Court holds that summary judgment would not be appropriate.

### V.     **CONCLUSION**

Overall, the Court reminds both parties that "Congress intended to create a very broad grant of jurisdiction in the Clean Water Act, extending to any aquatic feature within the reach of the commerce clause power." Leslie Salt, 896 F.2d at 357.  With this in mind, the Court holds that proof of a hydrological connection between a man-made settling basin and a water of the United States is sufficient to bring discharges from such a basin within the purview of the CWA.  In the instant matter, Plaintiff has shown that there is a question of material fact as to whether or not Defendant is discharging pollutants from its basins into waters of the United States via groundwater.  Therefore, the Court holds that summary judgment would be inappropriate.  Furthermore, the Court holds that Defendant's other arguments, regarding communications with California State agencies, the 60-day notice requirement of the CWA, and Defendant's actions since receiving the Notice, are insufficient to support summary judgment or summary adjudication of issues.  Therefore, the Court hereby DENIES Defendant's Motion in its entirety.

IT IS SO ORDERED.

Dated: September  1 , 2005

_____
UNITED STATES DISTRICT JUDGE